699 F.2d 503
 Robert C. HERZFELD, Petitioner,
v.
The UNITED STATES DISTRICT COURT For the DISTRICT OF
COLORADO and the Honorable Fred M. Winner, Respondents.
UNITED STATES of America, Plaintiff,
v.
Trenton H. PARKER, International Mining Exchange, Inc., Defendants,
Elizabeth Eken, as representative of the class of investors
defrauded by Trenton H. Parker and International
Mining Exchange, Inc., Appellant,
William C. Lam, Receiver-Appellee.
Robert C. HERZFELD, Plaintiff-Appellant,
v.
Trenton H. PARKER, Adrian Doyle, James T. Wilson, Stephen
Spangler, Robert E. Norwood and International
Mining Exchange, a Colorado corporation,
Defendants- Appellees.
Robert F. BROWN, Robert A. Brandt and RFB Petroleum, Inc., a
Texas corporation, Plaintiffs-Appellants,
v.
Trenton H. PARKER, the International Mining Exchange, Inc.,
a Colorado corporation, R. Steven Spangler, James
T. Wilson, Adrian Doyle and Robert
Norwood, Defendants-Appellees.
Elizabeth EKEN and William Johnson, Plaintiffs-Appellants,
v.
INTERNATIONAL MINING EXCHANGE, INC., et al., Defendants-Appellees.
 Nos. 82-1948, 82-1994, 82-2044, 82-2045 and 82-2046.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 31, 1983.
Rehearing Denied March 7, 1983.
 
 Patrick C. English of Dines, English & O'Kane, Clifton, N.J. (Walter L. Gerash of Gerash & Robinson, P.C., Denver, Colo., with him on brief), for plaintiff-appellant Elizabeth Eken.
 Richard B. Podoll of Podoll & Podoll, P.C., Denver, Colo., for plaintiff-appellant Robert C. Herzfeld.
 William A. Wilson of William Andrew Wilson, P.C., Denver, Colo., for plaintiffs-appellants Robert F. Brown and RFB Petroleum, Inc.
 Richard N. Stuckey of Keene, Munsinger & Stuckey, Denver, Colo., for receiver-appellee William C. Lam.
 Robert T. McAllister, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty. and Gerald J. Rafferty, Asst. U.S. Atty., Denver, Colo., with him on brief), for plaintiff United States of America.
 Before SETH, Chief Judge, and BARRETT and DOYLE, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 In this case we consider consolidated appeals all of which arise from a somewhat involved set of facts. We set out only the facts necessary to explain our disposition of the matter.
 
 
 2
 Trenton H. Parker was indicted in Colorado for mail fraud in connection with an investment plan. During his trial he pled guilty in the United States District Court for Colorado, 543 F.Supp. 1019, under a plea agreement pursuant to which he transferred to that court in Colorado approximately six million dollars which had been on deposit in a bank in the Bahamas. This money was part of the proceeds of the "Gold Tax Shelter Investment Program" which was the particular scheme which gave rise to the criminal charges. Pursuant to the plea agreement and the sentencing, the United States District Judge in Colorado ordered that the money be used for restitution to those investors defrauded by the Gold Tax scheme. The judge further ordered that the restitution be effected through a receivership and appointed a receiver. This appointment of a receiver during the course of the criminal proceedings and with no pending civil action is contested in each of the instant appeals.
 
 
 3
 Prior to the criminal proceedings several private investors, among them appellant Herzfeld, filed suits in the United States District Court for Colorado to recover monies lost in some of Mr. Parker's investment plans. After a lengthy discovery process, summary judgment for these plaintiffs was therein granted for about four million dollars. By far the greatest part of that figure represented attorney's fees and punitive damages. Shortly thereafter (December 23, 1981) a class action was brought in New Jersey on behalf of investors defrauded in the "Gold Tax Shelter Investment Program." The United States District Judge certified the class on January 29, 1982 and issued a restraining order against Barclay's Bank in the Bahamas and others. There were deposits of Mr. Parker in the bank which were proceeds of the Gold Tax scheme.
 
 
 4
 The Grand Cayman bank had entered no appearance in the class action pending in New Jersey. The government argues that any conformance by the bank to the restraining order would have been a purely voluntary matter. Thus it points to an affidavit by an Assistant United States Attorney which recites that the bank manager and its counsel advised him, apparently after the fact, that the bank would not honor a restraining order and would instead have transferred the funds on the request of Mr. Parker. Also, the only action taken by the bank was taken after the depositor, Mr. Parker, requested that the funds be transferred to Colorado pursuant to the plea agreement and the funds were so immediately transferred.
 
 
 5
 We do not decide whether the Grand Cayman bank was or was not bound by the orders of the New Jersey court. The court modified its order about the same time to permit the transfer of funds and the transfer was made in any event. Mr. Parker entered his plea on February 9, 1982 and he directed the bank to make the transfer. As mentioned, the funds were so transferred by the Grand Cayman bank to Colorado, and then into the registry of the court and to the receiver. The receiver was later directed by the instructions of the court given at the sentencing of Trenton Parker. The receiver invested the funds pending their distribution and set about to identify the defrauded investors.
 
 
 6
 Before any disbursement, the claims here considered were asserted against the funds. The plaintiffs in the Colorado civil actions attempted garnishment of the money in the receivership as did the class action plaintiffs. These parties argued that the receivership was void and that the funds were subject to garnishment. The class certified in New Jersey also moved to have the money transferred into a receivership there. In support of this motion the class also argued that the Colorado receivership was void.
 
 
 7
 The claims by the parties in the civil suits came before a judge other than the one before whom the criminal action had been heard and he ruled that the civil plaintiffs could not prevail unless the receivership established in the criminal case was found to be void. He refused to invalidate the receivership, he quashed the writs of garnishment, and denied the motion to transfer the funds to New Jersey. The judge recognized that the validity of the appointment of a receiver in a criminal case was the controlling question of law in the disposition of the claims of the civil plaintiffs, and was a matter about which there could be substantial difference of opinion. He formally made these findings for review under 28 U.S.C. Sec. 1292.
 
 
 8
 In addition to this, the Colorado plaintiffs have petitioned this court for a writ of prohibition directed against the receivership. Finally, there was an appeal pending from the denial of a motion filed by the New Jersey class plaintiffs in the Colorado criminal case requesting the transfer of the funds to New Jersey. These cases are consolidated to consider the question whether the receivership established in the criminal case is valid.
 
 
 9
 The district court's power to provide for restitution is created by the statutes relating to probation and suspension of sentences. Thus 18 U.S.C. Sec. 3651 provides in part that:
 
 
 10
 "While on probation and among the conditions thereof, the defendant--
 
 
 11
 ....
 
 
 12
 "May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and ...."
 
 
 13
 The statute does not delineate what, if any, special powers are granted to the sentencing court to create means by which restitution might be accomplished. This restitution is part of the criminal and sentencing procedure under the statute.
 
 
 14
 Rule 57(b) of the Federal Rules of Criminal Procedure gives courts latitude in fashioning special procedures. This section reads:
 
 
 15
 "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."
 
 
 16
 There is no convincing claim that any rule or statute makes the order in question "unlawful" nor that it is necessarily inconsistent with statutory law. Instead the parties in the civil actions urge that there is an absence of express authority and thus of jurisdiction to create the receivership.
 
 
 17
 The appellants urge that the legislative history as well as some judicial interpretation of Rule 57(b) suggests that it was directed to alleviate possible conflicts between state and federal procedures, and that it cannot be used to justify such an unusual practice as is here in question. 8B Moore's Federal Practice p 57.03 at 57-4 (2d ed.1965). However, legal and practical considerations militate against such a narrow interpretation.
 
 
 18
 Congress' enactment of the provision providing for restitution must contemplate sufficient flexibility and authority in criminal proceedings to accomplish restitution in a great variety of circumstances. In Blue Cross Ass'n v. Harris, 622 F.2d 972, at 978, the Eighth Circuit observed:
 
 
 19
 "It is a commonplace of statutory construction that a legislative grant of a power carries with it the right to use the means and instrumentalities necessary to the beneficial exercise of that power."
 
 
 20
 See also Daly v. Stratton, 326 F.2d 340 (7th Cir.). Thus, insofar as a receivership was necessary to accomplish restitution in these circumstances the authority to create the receivership should be considered as implicit in the power to order restitution.
 
 
 21
 As to changes taking place after defendant's trial, it is significant that by Public Law 97-291 restitution may now be ordered whether or not the defendant is placed on probation, and it has become a much more important part of sentencing. Reasons must now be expressed by the sentencing court if it does not order restitution in full. For purposes of this appeal it is important that these changes provide for much broader and flexible orders for restitution and new ways to enforce such orders entered in the criminal proceedings. But again there is no machinery provided or required to accomplish the restitution itself. This matter is still left to the discretion of the sentencing court, and in our view this includes the receivership here in issue.
 
 
 22
 The considerations involving practical concerns have also been recognized. Courts are making increasing use of special probation orders suitable for particular cases. We have approved such devices. United States v. Lawson, 670 F.2d 923 (10th Cir.). The use of special provisions demonstrates the need for flexibility in orders which attempt to make effective use of the authority to fashion useful probation. The Ninth Circuit in United States v. Pierce, 561 F.2d 735, stated that the "practical needs of the probation system" are a consideration in determining the validity of special conditions on probation. See also United States v. Consuelo-Gonzales, 521 F.2d 259 (9th Cir.). Thus even if the receivership cannot be said to be a necessity but a practical and effective device to assist in effecting the goals of the criminal system, it should be approved.
 
 
 23
 In a scheme like this one, where substantial sums of money are involved, the appointment of a receiver to invest and distribute the money is both necessary and beneficial to accomplish restitution. The functions to be performed are typically those of a receiver--only the setting is unusual.
 
 
 24
 The parties have cited three cases in the United States Courts of Appeal which involved receiverships in the context of a criminal case. These are United States v. Roberts, 619 F.2d 1 (7th Cir.); United States v. Boswell, 605 F.2d 171 (5th Cir.); Patterson v. Stovall, 528 F.2d 108 (7th Cir.). In all of these cases, however, the receiverships were initially established through civil actions.
 
 
 25
 The usual practice of directing a probation officer to accomplish restitution is desirable where there are few claimants and where the amount of money is not great. However, where as here the interim investment of the money is necessary, where the identification of the persons entitled to restitution may be difficult, where the number of claimants is large and a pro rata distribution of a large fund is necessary, a person with more specialized training is required. The expertise of the probation officers is in other fields.
 
 
 26
 The Colorado receiver is under the control and direction of the court appointing him as are the receivership proceedings to accomplish restitution. There is no suggestion that there may be a delegation of authority to private litigants nor is restitution part of litigation among private parties. Thus there would seem to be a serious question whether the district court in Colorado could delegate restitution to be accomplished in such proceedings nor even by another receiver appointed in connection therewith.
 
 
 27
 A criminal proceeding in a United States district court is not in a separate compartment with the court exercising only a limited portion of its authority as the appellants argue. The federal courts obviously are of limited jurisdiction but the extent of the authority of the district courts in these circumstances is not limited or governed by whether the proceeding is criminal or civil. We find nothing in the decisions nor in statutory law which prevents the creation of the receivership in the criminal action here under consideration.
 
 
 28
 There is an important additional factor in the case which also leads to the conclusion we reach. This is the fact that the return of the money to the United States and restitution to the investors was part of the plea agreement between the United States and the defendant. It was reached during the course of defendant's trial. The defendant performed his part of the agreement in instructing the Grand Cayman bank to remit the funds to the United States. This was the only effective action to bring the funds into the registry of the court to permit restitution. It remains for this restitution to proceed to conclusion, for the plea agreement to be executed on the Government's side, and for the condition of probation to be met.
 
 
 29
 Thus the plea agreement, the return of the funds to the United States, the sentencing and the restitution are all interrelated parts of the proceedings in Colorado which started with the indictment of the defendant in June of 1981. The restitution is the unexecuted part of this bundle and remains part of the sentencing. It is important that the Colorado proceedings thus continue on the track they are now on, and that nothing be done to jeopardize the restitution underway pursuant to the agreed transfer of funds and the plea agreement generally.
 
 
 30
 The New Jersey judge, Judge Stern, in his modification of the injunction indicated that the important thing was to have the transfer of funds accomplished. The fact that the funds would become locked into the Colorado proceedings may not then have been contemplated, but in any event, they became available to the investors which was the end sought in the class action. Judge Stern thus took all the action in the New Jersey suit that was possible to protect the investors and to prevent the defendant from dissipating the funds in the Grand Cayman bank. This, together with the action of the prosecutors in the plea bargaining, has made the money available for return to the investors. It makes no difference at this point what the Grand Cayman bank would or would not have done had the defendant not taken the action he did as part of the plea agreement as the funds were remitted, and they are under the control of the Colorado court for the eventual return to investors. Both the New Jersey court and the Colorado court are trying to have as much money as possible returned to the investors. There appears to be no reason why they cannot proceed on parallel paths made necessary by the unusual circumstances and the origin of each action.
 
 
 31
 Each of the groups of parties in the civil proceedings urge that they did the most to bring the defendant to justice, to determine where the invested funds had been deposited, and were otherwise diligent in pursuing their claims. However, we cannot decide these appeals on the basis of which of the parties is entitled to the most equitable consideration. Again we must hold that the trial, the plea bargain, the return of funds to the United States, the receivership and the probation have all been interdependent elements of the Colorado criminal proceedings. It is one package for all practical purposes, and should be there concluded as such as quickly and efficiently as possible.
 
 
 32
 We hold that the Colorado receivership is valid in all respects and the funds therein held are in no way subject to garnishment.
 
 
 33
 The application for a writ of prohibition is denied in Case 82-1948.
 
 
 34
 In 82-1944 we affirm the denial of motions to transfer the receivership funds to the New Jersey class action or to a receivership there created and otherwise affirm the trial court.
 
 
 35
 In 82-2044 and 82-2045 we affirm the order of the trial court quashing the writs of garnishment and the denial of relief to the movants.
 
 
 36
 In 82-2046 we also affirm the order of the trial judge refusing to transfer funds to New Jersey and otherwise affirm the orders of the trial judge.