UNITED STATES of America, Plaintiff,

v.

Miguel A. SERRANO, Defendant.

Crim. No. 84–381 (JP).

United States District Court,
D. Puerto Rico.

Oct. 25, 1985.

Lydia Lizarribar, Asst. U.S. Atty., Chardón St., Hato Rey, P.R., for plaintiff.

Carlos Coll Carpintero, Hato Rey, P.R., for defendant.

## ORDER

PIERAS, District Judge.

This matter came before the Court on October 21, 22 and 24, 1985 for a Hearing on Restitution pursuant to 18 U.S.C. Sections 3579 and 3580. On February 12, 1985 defendant Miguel A. Serrano plead guilty to Counts 3, 5 and 9 of the Indictment herein. By Order of September 18, 1985, the Court denied the defendant's Motion to Withdraw Plea. On October 2, 1985, the defendant was sentenced on the above-mentioned counts. As part of the Sentence on Count 9, the Court sentenced the defendant to make restitution of the losses suffered by the victim as a result of the defendant's embezzlement of funds as alleged in Count 9 and admitted by the defendant.

The Court has heard testimony and considered exhibits presented by the Government, the defendant and the victim as to the amount of loss sustained by the victim as a result of the offense and the financial resources of the defendant. After careful consideration, the Court enters the following findings of fact and directives of restitution.

## I. *FINDINGS OF FACT:*

### A. *Victim's Losses:*

1. At all times pertinent to the Findings of Fact herein, defendant Miguel A. Serrano was Senior Vice President of Shearson Loabes Rhodes, Inc., a subsidiary of Shearson American Express, Inc.

2. Defendant Miguel A. Serrano was doing business in Puerto Rico and in the Continental United States as Ponce Developers, Inc., and as Ponce M.A. Developers, Inc., d/b/a Ponce Petroleum Co., a Texas corporation.

3. On October 6, 1984, Federal Savings & Loan Insurance Corporation (hereinafter FSLIC) was appointed receiver of Home Federal Savings & Loan Association of Puerto Rico (hereinafter HFSLA). Pursuant thereto, FSLIC acquired the assets and liabilities of HFSLA and became its successor in interest. Thereafter, FSLIC sold the assets acquired to Caguas Federal Savings & Loan Association, excluding the Universal Tank Loan. In March 14, 1985, Caguas Federal Savings & Loan Association assigned all its rights, title and interest in and to any claims HFSLA may have had

acquired, one of which is the claim at issue here.

4. On or about June 1983, the defendant and then-operating HFSLA entered into a rehabilitation plan, part of which involved the investment by the defendant of brokered funds received by HFSLA.

5. In July and August 1983, Miguel A. Serrano, d/b/a Ponce Developers, Inc., received monies by means of four wire communications from HFSLA to be invested for the benefit of HFSLA. The defendant converted portions of these monies to his own use in the following manner:

a) On July 19, 1983, $4,000,000.00 was transferred, of which $86,852.45 was converted by the defendant;

b) On July 27, 1983, $5,100,000.00 was transferred, of which $702,187.50 was converted by the defendant;[1]

c) On August 26, 1983, $2,247,000.00 was transferred, of which $813,966.40 was converted by the defendant;

d) On August 30, 1983, $2,500,000.00 was transferred, of which $746,954.64 was coverted by the defendant.

6. The monies converted as described in Finding of Fact 5(a)–(d) were transferred to the account of Ponce Developers, Inc. at Park Ryan brokerage house in Little Rock, Arkansas. The defendant subsequently transferred the monies to the account of Ponce Developers, Inc. at Texas Commerce Bank in Midland, Texas, in the following manner:

a) On September 15, 1983, $2,200,000.00.

b) On September 21, 1983, $180,630.64.[2]

7. All funds, including principal and interest, were subsequently transferred by means of internal bank transfer to the account of Triax Oil and Gas, Inc., Midland, Texas, for purchase and drilling of oil wells. These transfers were made in the following manner:

a) On September 23, 1983, $1,092,544.00;

b) On September 29, 1983, $1,000,000.00;

c) On October 31, 1983, $300,000.00.

8. The total loss to FSLIC from the defendant's acts of embezzlement amounts to $2,944,328.68.[3] This amount represents $2,349,960.99 in principal plus $594,367.69 in interest.[4]

## II. ASSETS OF THE DEFENDANT:

The financial resources of the defendant, as testified to at the Hearing, are the following:

1. The Indictment, Count 9, reads $702,202.00 as the amount converted in this transaction. However, at the restitution hearing, Mark Fred Gasser testified as market specialist of the victim, FSLIC, to the amount stated in the text, and the Court accepts his testimony.

2. These amounts include principal and interest accrued thereon until the dates of transfer.

3. Defendant Serrano has argued that the principal represents the commissions earned by him in his investment efforts or, in the alternative, that, in the hearing on his change of plea, he admitted only to acts relating to the July 19, 1983 transfer. The Court finds that Miguel Serrano moved the Court for a change of plea on the sixth day of trial after the government had presented evidence sufficient to sustain all transactions charged in Count 9, and that he pleaded guilty in writing and in open court to the whole of Count 9, even if he only described in open court one of the transfers charged. Furthermore, before accepting the defendant's change of plea, the Court granted the defendant all the constitutional safeguards to insure that his plea was knowing and voluntary. See F.R. Cr.P. Rule 11(c).

In addition, Serrano has also argued that the victim's loss has already been compensated by the rise in value of the Ginnie Maes which he purchased on the victim's behalf. The Court rejects any such reasoning. The victim has gained this increase in value on the portion of money Serrano did not convert while still having lost the principal he converted and any rise in value which could have resulted from its investment.

4. The interest amounts were computed with reference to the testimony of Mark F. Gasser, see note 1, *supra*, that interest of 12% on the embezzled monies totalled $480,800.79 as of April 30, 1985, an additional $95,552.84 as of October 1, 1985 and accrual at the rate of $783.22 per diem thereafter. The additional interest accrued as of October 24, 1985 is $18,014.06.

A. *Corporate:*

1. 60% ownership of Ponce M.A. Developers, Inc., d/b/a Ponce Petroleum Co.;

B. *Real Estate:*

1. Lot 23, Colinas de Luquillo Development:

a) Appraised value, including structures: $64,000.00.

b) Liens:

1) Lis pendens filed by Banco de Ponce for $72,000.00;

2) $7,000.00 minor's claims;

3) $19,425.00 alimony judgment.

2. Lot 24, Colinas de Luquillo Development:

a) Appraised value: $72,000.00;

b) Liens:

1) First mortgage $83,000.00 (face value);

2) Lis pendens filed by GELCO, P.R., for $51,101.16;

3) Lis pendens filed by Banco de Ponce for $27,365.63;

4) $7,000.00 minor's claims;

5) $19,425.00 alimony judgment;

3. Lot 25, Colinas de Luquillo Development:

a) Appraised value, including structures: $300,000.00;

b) Liens: mortgage of $100,000.00 (face value).

4. O'Neill Street property, pending litigation.

C. *Other Assets:*

1. Seven Pasofino horses with a market price of $28,000.00. No offer outstanding; last proposal $7,000.00 for six horses;

2. Approximately 10 paintings with an estimated value of $5,000.00;

3. Gold coin collection, purchased by defendant for $9,120.00.

4. Money judgments in favor of Serrano:

a) $75,000.00 against First San Juan Corporation;

b) $59,000.00 against Francisco Crespo;

5. *Other Claims:*

a) $2,400.00 allegedly owed by Eduardo Rodriguez;

b) $2,400,000.00 in action pending against Home Federal Association.[5]

III. REMEDY:

 It is clear that the statute contemplates a Court order that the remedy of restitution be made immediately in most cases. 18 U.S.C. § 3579(f). To leave this restitution to be made at the will of the criminal will not effectuate the intent of Congress. The Court concludes that the only way to effectuate the statute in this case is to seize the assets which were produced as fruits of Serrno's offense, namely, the corporations to which Serrano transferred the stolen money. The Court finds that the assets of Ponce Developers, Inc. and Ponce M.A. Developers, Inc., d/b/a Ponce Petroleum, are directly traceable to the stolen monies, and thereby available for use in

5. The Court will not take into consideration any setoff defendant alleges based on money he has stolen. The defendant testified that the amount of $2,400,000.00 was owed to him pursuant to a Purchase and Repurchase agreement, which was submitted as an Identification during the Hearing. The Court takes judicial notice that the Purchase and Repurchase Agreements were admitted into evidence in Criminal Case No. 85–024(GG), and that the Indictment therein alleged transactions surrounding this agreement. These transactions were held fraudulent by jury verdict on September 24, 1985, and the defendant was sentenced today to 12 years and full restitution of the monies converted there. We conclude that this matter will not be the subject of retrial in this hearing, and that defendant cannot now benefit from the fruits of his own fraud.

Furthermore, this is a criminal and not a civil action, in which the victim is directed to be given a remedy by statute. In the Senate Debate on the Restitution Section of the Statute, Senator Heinz stated that "restitution to the victim will be the expected norm, and no longer an after thought." 128 Cong.Rec. 13063 (1982) (Statement of Senator Heinz). This Hearing cannot proliferate into a multitude of ancillary law suits. It is directed strictly to the loss in this particular case created by the criminal act of the defendant to which he plead guilty here.

restitution independently of Serrano's other assets to which consideration of the financial needs of Serrano's dependents must be given under 18 U.S.C. § 3664(a).

A. *Appointment of Trustee to Manage and Control Ponce Developers, Inc. and Ponce, M.A. Developers, Inc., d/b/a Ponce Petroleum:*

The Trustee of Serrano's assets, Mr. Jose Rossy, is hereby empowered to manage Ponce M.A. Developers, Inc. and its assets for the purpose of accomplishing restitution in acordance with the following directives:

1. He is to issue shares of stock of Ponce M.A. Developers, Inc., d/b/a Ponce Petroleum, at a ratio of 60% to Miguel Serrano and 40% to Steven Armbruster. This ratio is in accordance with Armbruster's testimony, that Serrano engaged him to manage the corporation in Midland, Texas, and promised to give him 40% of the shares of the Corporation. The shares, as well as the stubs in the corporate treasury book, must carry the following notations:

a) In the case of Serrano's shares: "These shares are subject to the interest of the victim Federal Savings and Loan Insurance Company, in Criminal Case No. 84–381 before the U.S. District Court for the District of Puerto Rico, and may be sold at public auction to satisfy the claim of the victim."

b) In the case of Steven Armbruster's shares: "These shares are subject to possible legal claim by FSLIC, provided said claim is made within 30 days from date of issuance." [6]

2. He, the Trustee, shall manage the corporation in the following manner:

a) The Trustee will travel to Midland, Texas, and take possession of the assets and operations of Ponce M.A. Developers, Inc. (d/b/a Ponce Petroleum) and assume control of the operations of Ponce Petroleum.

b) Mr. Armbruster is to advance to the Trustee the sum of $5,000.00 from the September 1985 production check to Ponce Petroleum to cover the Trustee's travel to and lodging expenses in Midland, Texas.

c) The Trustee is to perform at Midland an operational audit of Ponce Petroleum and will examine, to the extent available, the records of Triax Oil & Gas, Inc. and/or Realm Operating, Inc. and determine such measures as are necessary and proper for the administration of the operations. These measures include the release from their obligations and employment of any officers and employees of Ponce Petroleum, and the hiring and contracting of such personnel and assistance as he may deem necessary for the proper administration of the company, including the determination of their salaries, provided that the Trustee's decisions pertaining to employment and change of personnel shall be approved by the Court in its discretion, which exercise of discretion shall be absolute and unappealable.

d) The Trustee, with the assistance of the victim Federal Savings & Loan Insurance Corporation, shall locate and retain an expert to advise him of the proper disposition of the assets of Ponce Petroleum, including, but not limited to, any sale of such assets, lease of such assets, subcontracting, partial sale of the assets or oil leases or the continued operation of such assets for the benefit of the trust. The expert shall be paid by the victim at present and reimbursed to the victim at a later date when funds from the corporation are available through operation or liquidation.

e) The victim is to provide and pay for any legal services needed for the work to be performed by the Trustee and is to be reimbursed at a later date when funds

---

**6.** The victim has raised the question that Serrano could not give what he had stolen and that, therefore, Armbruster is not entitled to the shares. The decision of this matter at this time would deprive Armbruster of his right to due process of law. Therefore, the determination of this matter will be decided, if, and only if, the victim files a separate lawsuit within 30 days from issuance of Armbruster's shares.

are available from the Corporation through operation or liquidation.

f) Once the Trustee has consulted with the expert and finalized a recommendation with respect to the proper disposition of the assets, he shall advise the Court of his recommendations in writing, in accordance with the Court's Order of July 23, 1985, with a copy to the parties and the victim.

g) By this Order the Court grants the Trustee the power to disburse to the victim the ongoing profits from operation of the Corporation in amounts within his informed discretion and with the consent of the Court. However, the Trustee will not sell at public auction or otherwise dispose of any shares of the Corporation without first a petition to the Court for its order of approval and a hearing held before the Court.

IT IS SO ORDERED.