[Nos. 19711–8–I; 20608–7–I; Division One. December 30, 1988.]
21370–9–I.

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT LOUIS
NELSON, JR., *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Associ-
ation,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Edwin K. Inkley, Deputy,* for respondent.

SWANSON, J.—This case presents an issue of first impression: whether the superior court has the authority to order the sale of a convicted defendant's personal property in police possession in carrying out the court's statutory duty to order restitution.

Upon the entry of guilty pleas to five counts of first degree trafficking in stolen property, six counts of second degree burglary, and one count of first degree possession of stolen property, Robert Louis Nelson, Jr., seeks review of the Superior Court's March 6 and May 29, 1987, orders which directed the sale of Nelson's property seized pursuant to a search warrant in partial satisfaction of his restitution obligation.

According to the certifications of probable cause,[1] during 1985 and early 1986 Nelson, Jared Vergne Ball, a/k/a Jerry Johnson, and Steven Baer, assisted by two high school–aged accomplices, engaged in a burglary and fencing operation involving mainly computers and electronic equipment which were stolen, repaired and resold, some at Communication Electronics, a Redmond, Washington, electronics repair business owned by Nelson. The crimes were committed in a 4–county area of Western Washington and the stolen items were resold in Washington and in the San Francisco Bay area in California. Nelson was involved in crimes including burglaries, thefts and possession of, and trafficking in, stolen property which involved about 28 separate victims and stolen property valued at thousands of dollars. Nelson, a convicted burglar and parolee, also possessed two stolen handguns.

In February 1986 Baer provided information about the burglary and fencing operation to the King County Prosecutor's Office. On February 26, 1986, Nelson, who knew

---

[1] As part of his plea agreement, Nelson agreed that the sentencing court may consider the facts set forth in the certifications of probable cause.

that the police were investigating him, voluntarily went to the police station to talk to the police and, after being placed under arrest for the felonious possession of stolen property, escaped through a second–floor window and was apprehended within a half–hour. The police obtained and executed search warrants at Communication Electronics, Nelson's residence, and Ball's storage locker. Stolen items were found and a large amount of property seized.

A June 10, 1986, information charged Nelson with a total of 11 felony counts. Subsequently Nelson entered into a plea agreement whereby he agreed to waive venue for certain property crimes committed in Pierce, Snohomish and Island Counties and to plead guilty to an amended information. Nelson also agreed to stipulate to the real facts of uncharged crimes for sentencing purposes and to pay restitution for the losses stemming from these crimes. Under the agreement the State agreed not to charge Nelson with any additional property crimes committed during a specified period and to recommend a 7–year exceptional sentence above the 43– to 57–month standard sentencing range.

Nelson pleaded guilty in superior court and was given a 7–year exceptional sentence and was ordered to pay restitution, in an amount to be determined, to the victims of both charged and uncharged crimes.

A subsequent order was entered setting the restitution amount owed by Nelson at a total of about $60,000. On March 6, 1987, the sentencing court entered written findings of fact, conclusions of law and an order directing that property seized by the police from Nelson during the execution of the search warrants and established to belong to Nelson be sold to help satisfy Nelson's restitution obligation. The court found that Nelson owed a total restitution obligation of more than $60,000, had been sentenced to a 7–year prison term and had no present source of income so that it was unlikely that upon his release from prison he could satisfy the entire restitution obligation before the

expiration of the sentencing court's maximum 10–year jurisdiction pursuant to RCW 9.94A.140(1). To help satisfy Nelson's restitution obligation, the court thus directed:

> The King County Police Department is authorized to sell all property which was seized by the police in their investigation of this case, and which it is established that Defendant Nelson owns. . . . subject to the restrictions contained in this order.

The order was based upon both RCW 9.94A.140(1), which empowers the court to set the terms and conditions for the restitution payment, and the court's power to enforce a lawful order. Under the order's terms, the actual sale was not to take place until the sentencing court's power to order the sale was upheld by the State Court of Appeals, and Nelson could avoid the sale by making a restitution payment equal to the established fair market property value.

In a May 29, 1987, order and a supplemental March 29, 1988, order, the court entered findings that specific property items claimed by Nelson either belonged to Nelson, were items which Nelson would normally be entitled to possess or were items to which Nelson had no right of ownership or possession, and ordered the sale of the first two classes of items pursuant to its March 6, 1987, order. The third class of items was to be disposed of following established police procedure.

Nelson's motion seeking the vacation of his sentence and specific performance of the plea bargain was denied. In this consolidated appeal Nelson has presented argument only as to the March 6 and May 29, 1987, orders.

Under the Sentencing Reform Act of 1981 (SRA), the trial court's duty to order restitution[2] is set forth at RCW

---

[2]RCW 9.94A.030(19) (recodified as subsection (22) in 1988) defines "restitution":

"'Restitution' means the requirement that the offender pay a specific sum of money over a specific period of time to the court as payment of damages. The sum may include both public and private costs. The imposition of a restitution order does not preclude civil redress."

9.94A.120(14) (amended in 1987 and recodified as subsection (15) in 1988) as follows:

> The court shall order restitution whenever the offender is convicted of a felony that results in injury to any person or damage to or loss of property, unless extraordinary circumstances exist that make restitution inappropriate in the court's judgment. The court shall set forth the extraordinary circumstances in the record if it does not order restitution.

Absent extraordinary circumstances, "[r]estitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property". RCW 9.94A.142(2); *State v. Raleigh,* 50 Wn. App. 248, 252, 748 P.2d 267, *review denied,* 110 Wn.2d 1017 (1988).

> In addition, restitution may be ordered

> when the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement[.]

RCW 9A.20.030; *see* RCW 9.94A.142(2); *State v. Tindal,* 50 Wn. App. 401, 404, 748 P.2d 695 (1988).

The restitution amount "shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime." RCW 9.94A.140(1), .142(1); *Tindal,* at 404–05; *Raleigh,* at 251–52. The restitution amount "shall be ordered paid by no later than ten years after the date of the judgment of conviction", RCW 9.94A.120(9),[3] and the sentencing court retains jurisdiction over the offender during this time, RCW 9.94A.140(1), .142(1); *State v. Goodrich,* 47 Wn. App. 114, 116–17, 733 P.2d 1000 (1987). If restitution is imposed, "the sentence shall specify

---

[3]In 1988 RCW 9.94A.120(9) was recodified as subsection (10) and was amended in part to read as follows: "All monetary payments ordered shall be paid no later than ten years after the most recent of either the last date of release from confinement pursuant to a felony conviction or the date the sentence was entered." Laws of 1988, ch. 153, § 2, p. 611.

a reasonable manner and time in which the fine or restitution shall be paid." Former RCW 9.94A.120(9).

Here the sentencing court ordered a total restitution payment exceeding $60,000 and, following a hearing, in partial satisfaction of Nelson's restitution obligation ordered the sale, subject to the prior approval of the State Court of Appeals, of property which had been seized by the police pursuant to search warrants and which had been established to belong to Nelson or which Nelson was otherwise entitled to possess. Nelson argues that absent express statutory authority, the Superior Court acted beyond its power in ordering the sale of his property. The State responds that given Nelson's otherwise penniless condition, to effectuate its statutory duty to order restitution, the Superior Court had the implied power under RCW 2.28.150 to order the sale of Nelson's property to help satisfy his restitution obligation.

RCW 2.28.150 states:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.

*See generally In re Cross,* 99 Wn.2d 373, 379, 662 P.2d 828 (1983); *In re Marriage of Crossland,* 49 Wn. App. 874, 877–78, 746 P.2d 842 (1987).

██ RCW 2.28.150 "generally allows the courts to adopt suitable procedures to effect their jurisdiction when no procedures are specifically provided." (Footnote omitted.) *In re Cross, supra* at 378. However, the statute applies only where "(1) jurisdiction is otherwise conferred on the court, and (2) no course of proceeding is specifically pointed out." *Cross,* at 380; *accord, In re Marriage of Crossland, supra* at 878. Further, the mode of proceeding adopted must be that "most conformable to the spirit of the laws." RCW 2.28.150; *In re Cross, supra.*

In *State ex rel. McCool v. Small Claims Court of Jefferson Cy. Dist. Court,* 12 Wn. App. 799, 801–02, 532 P.2d 1191, *review denied,* 85 Wn.2d 1008 (1975), where RCW 12.40.080 conferred jurisdiction upon the small claims department of the district court to make orders deemed to be "just and equitable for the disposition of the controversy", the court held that any deficiency of procedure in the primary grant of jurisdiction could be provided under RCW 2.28.150 to permit the small claims court to order a new trial, particularly since the procedure of ordering a new trial to correct its own error was conformable to the spirit of RCW 12.40.

In *State v. Kolocotronis,* 34 Wn. App. 613, 618–20, 663 P.2d 1360, *review denied,* 100 Wn.2d 1014 (1983), jurisdiction was conferred upon the court by RCW 10.77.200, which grants a petitioner the right directly to petition the court for final discharge or conditional release, although the statute does not set forth a specific procedure for doing so. Absent any statutory procedural requirements, the *Kolocotronis* court, at pages 620–24, held that it had the inherent power under RCW 2.28.150 to prescribe the procedures to be followed, and proceeded to do so.

In *In re Cross, supra* at 379–80, where a deprivation of liberty was involved, the court strictly construed RCW 2.28.150 and found it to be inapplicable. The *Cross* court, at pages 379–80, found that the Court Commissioner lacked jurisdiction to order the mentally disabled person's return to inpatient treatment since he failed to make the requisite RCW 71.05.340(3) finding of noncompliance with the conditions of release, and the course of proceeding was specifically pointed out by a court rule. *Cross,* at 381, states that even if RCW 2.28.150 was applicable, the procedure followed in ordering the detainee returned to the hospital for inpatient treatment was inappropriate since the mode of proceeding "most conformable to the spirit of the laws" was to dismiss the revocation proceeding and direct the respondents, if they desired, to commence a standard commitment proceeding under RCW 71.05.150.

In the instant case it is undisputed that the superior court has jurisdiction under former RCW 9.94A.120(14) and 9.94A.142(2), absent extraordinary circumstances, to order restitution. Nelson argues that the second RCW 2.28.150 requirement is absent here since the course of proceeding is specifically pointed out. Under RCW 9.94A.200(2)(b) and (c),[4] if the court finds that an offender has violated any condition or requirement of his sentence, the court may order the offender to be confined for not more than 60 days for each willful violation and if the court finds that the violation was not willful, the court may modify its prior order regarding monetary payments or community service obligations. The State contends that the court's power to impose reasonable terms and conditions for the restitution payment under former RCW 9.94A.120(9) is not limited by the judge's power to punish noncompliance with a restitution order by imposing jail time.

The grant of jurisdiction here is to order restitution for an offense involving personal injury or property damage or loss. Thus former RCW 9.94A.120(9)'s requirement that the sentence specify a "reasonable manner and time in which the . . . restitution shall be paid" and the RCW 9.94A.200 provision authorizing incarceration for the willful violation of a requirement of a sentence, including a restitution order, provide a course of proceeding specifically pointed out to effect the grant of jurisdiction.

Even if RCW 2.28.150 is applicable, the question is whether the procedure of executing against the offender's personal property in partial satisfaction of a restitution order is "most conformable to the spirit of the laws." RCW 2.28.150; *In re Cross, supra.* We conclude that it is not.

Although the SRA's purposes include providing just punishment, offering the defendant an opportunity to improve himself and protecting the public by making crimes unprofitable, RCW 9.94A.010(2), (4), and (5), the

---

[4]RCW 9.94A.200 was amended by Laws of 1988, ch. 155, § 2, p. 642; ch. 153, § 11, p. 621. Subsection (2)(b)'s language was altered.

restitution award itself carries out these purposes. The SRA authorizes a maximum of 60 days' confinement as a means to enforce the restitution order, RCW 9.94A.200(2)(b), and expressly provides that a restitution order does not deprive a victim of the right to pursue a civil remedy, former RCW 9.94A.030(19) (recodified as subsection (22) in 1988); 9.94A.140(4), .142(4). Thus executing against a defendant's property in a criminal proceeding as if the restitution order were a civil judgment does not appear to conform to the spirit of the SRA.

The State relies upon two federal cases for its claim that the superior court has the implied power to carry out its restitution order by resort to procedures generally followed in civil proceedings.

*United States v. Serrano,* 637 F. Supp. 12 (D.P.R. 1985) is inapposite. In *Serrano,* at 14–16, the court authorized the seizure for use in restitution of the assets of the corporations partially owned by the defendant to which the embezzled money was transferred in order to effectuate the congressional intent that restitution be made immediately in most cases. However, in that case, restitution was ordered pursuant to 18 U.S.C. §§ 3579 and 3580. *Serrano,* at 12. Although subsection 3579(h) was not specifically cited, this provision expressly provides that a restitution order may be enforced in the same manner as a civil judgment:

> An order of restitution may be enforced by United States or a victim named in the order to receive the restitution in the same manner as a judgment in a civil action.

*United States v. Satterfield,* 743 F.2d 827, 838 (11th Cir. 1984), *cert. denied,* 471 U.S. 1117 (1985). Washington has no comparable statute.

In *Herzfeld v. United States Dist. Court for Dist. of Colo.,* 699 F.2d 503, 504–05 (10th Cir.), *cert. denied,* 464 U.S. 815 (1983), the defendant's trial during which he pleaded guilty to mail fraud in connection with an investment scheme preceded the enactment of Public Law 97–

291, which contained the restitution civil enforcement provision codified as 18 U.S.C. § 3579(h). The District Court ordered that the $6 million proceeds from the fraudulent investment scheme be used for restitution, which was to be effected through a receivership.

The *Herzfeld* court, at page 505, noted that under rule 57(b) of the Federal Rules of Criminal Procedure, absent a procedure prescribed by rule, the court may proceed in any lawful manner not inconsistent with a court rule or applicable statute and that Congress' enactment of a restitution provision must contemplate the authority to accomplish restitution so that to the extent that a receivership was necessary to accomplish restitution in the circumstances of that case, the authority to appoint a receiver "should be considered as implicit in the power to order restitution."

However, *Herzfeld,* at 506, continues, for purposes of the appeal it was important that the changes wrought by Public Law 97–291 provided for "new ways" (including civil enforcement methods) to enforce restitution orders, although a receivership was not expressly mentioned so that the matter was left to the sentencing court's discretion. The *Herzfeld* court upheld the creation of the receivership given these circumstances: the return of the money to the United States and restitution to the investors were part of the defendant's plea agreement and where large sums of money are involved, it is necessary and beneficial to accomplish restitution not through a probation officer but a receiver who has the expertise to invest and distribute the money to a large number of claimants. Thus even in *Herzfeld,* the court relied partly on the amended federal restitution statute, which includes 18 U.S.C. § 3579(h), in upholding the creation of the receivership.

Besides the federal statute authorizing civil enforcement of a restitution order, a number of state sentencing statutes which authorize restitution contain a similar provision, *e.g.,* Fla. Stat. Ann. § 775.089(6) (West Supp. 1988) (recodified as subsection (10)) and Ga. Code Ann. § 17–14–13 (1982), *cited in United States v. Satterfield,* 743 F.2d at 839 n.9;

Ala. Code § 15–18–78 (Supp. 1983), *cited in Rice v. State,* 491 So. 2d 1049 (Ala. Crim. App. 1986).

A Washington statute, RCW 10.82.010, authorizes executing against the defendant's property upon a judgment for fines and costs:[5]

> Upon a judgment for fine and costs, and for all adjudged costs, execution shall be issued against the property of the defendant, and returned in the same manner as in civil actions.

However, no Washington statute authorizes the civil enforcement of a restitution order. Thus the final question is whether, absent an express statutory provision, executing against the defendant's property is a "reasonable manner" specified by the Superior Court for the payment of restitution under former RCW 9.94A.120(9).

Washington courts have narrowly confined the exercise of the trial court's discretion in imposing restitution. In *State v. Mark,* 36 Wn. App. 428, 433, 675 P.2d 1250 (1984), the court stated:

> [R]estitution must conform to the statutory language. It is for the Legislature to define the authority within which the trial court's discretion will be exercised in imposing restitution on the part of a defendant.

*See State v. Barr,* 99 Wn.2d 75, 78–79, 658 P.2d 1247 (1983).

■ "An act must be construed as a whole, considering all provisions in relation to each other and, if possible, harmonizing all to insure proper construction of each provision." *In re Piercy,* 101 Wn.2d 490, 492, 681 P.2d 223 (1984); *accord, State v. Huntley,* 45 Wn. App. 658, 660–61, 726 P.2d 1254 (1986). "Absent a statutory definition, words of a statute must be accorded their ordinary meaning." *Davis v. Department of Empl. Sec.,* 108 Wn.2d 272, 277,

---

[5]The federal counterpart is 18 U.S.C. § 3565, which authorizes the United States to collect a criminal fine or penalty "'by execution against the property of the defendant in like manner as judgments in civil cases.'" *United States v. Satterfield,* 743 F.2d 827, 838 (11th Cir. 1984), *cert. denied,* 471 U.S. 1117 (1985).

737 P.2d 1262 (1987), *quoted in State v. Halsen,* 111 Wn.2d 121, 123, 757 P.2d 531 (1988).

Black's Law Dictionary 1138 (5th ed. 1979) defines "reasonable" as follows: "Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view." As noted above, the restitution order itself effectuates the SRA's purposes. The authority to impose restitution that does not exceed double the amount of the offender's gain or the victim's loss, RCW 9.94A.140(1), .142(1), ensures that the punishment is "proportionate to the seriousness of the offense", RCW 9.94A.010(1). Just punishment is imposed, RCW 9.94A.010(2), by taking away the fruits of crime and providing at least partial compensation to the victim through restitution. Imposing restitution helps to protect the public, RCW 9.94A.010(4), by making crime profitless. D. Boerner, *Sentencing in Washington* § 4.8, at 4–14 (1985).

RCW 9.94A.140(1) and .142(1) provide that the Department of Corrections is to supervise the offender's compliance with restitution and that the restitution amount, terms and conditions may be modified by the court during the 10 years following the imposition of sentence. RCW 9.94A.200 sets forth the procedure for enforcing a restitution order, including confinement for a willful violation and modification of prior orders imposing monetary payments and community service obligations where a violation is not willful. Former RCW 9.94A.030(19), which defines "restitution," states that civil redress is not precluded, and RCW 9.94A.140(4) and .142(4) expressly preserve the civil remedies or defenses available to the victim or defendant. Considering and harmonizing the SRA's provisions, it appears that restitution under the SRA is intended to be punishment subject to supervision, modification and enforcement within the criminal justice system and separate from civil remedies expressly preserved to the victim so that to be in harmony with the SRA's other provisions, a "reasonable manner . . . in which the . . . restitution shall be paid" under former RCW 9.94A.120(9) does not include resort to

civil enforcement procedures including execution against the defendant's property. Absent express authorization, such a procedure appears to be inappropriate in the context of the SRA.

If statutory authorization for the civil enforcement of a restitution order existed, no due process violation arises, as Nelson claims, as long as the restitution order is clearly a criminal, rather than civil, penalty, as it is under the SRA, *see State v. Barr,* 99 Wn.2d at 79; *United States v. Satterfield,* 743 F.2d at 836–37; *Rice v. State,* 491 So. 2d at 1052, since the criminal proceeding is not thereby transformed into a civil action, triggering the Seventh Amendment jury trial right, *United States v. Keith,* 754 F.2d 1388, 1391–92 (9th Cir.), *cert. denied,* 474 U.S. 829 (1985); *United States v. Satterfield, supra* at 836, 839; *Rice v. State, supra* at 1053.

We reverse the orders directing the sale of the defendant's personal property in police possession.[6]

GROSSE, J., and COLE, J. Pro Tem., concur.

---

[6]In light of our decision, we need not address Nelson's contention that the challenged orders are in conflict with *State v. Card,* 48 Wn. App. 781, 741 P.2d 65 (1987).