USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1651 FEDERAL DEPOSIT INSURANCE CORPORATION, Cross-Plaintiff, Appellee, v. SHEARSON-AMERICAN EXPRESS, INC., ET AL., Cross-Defendants. __________ BANCO COOPERATIVO DE PUERTO RICO, Intervenor, Appellant. ____________________ No. 92-1652 FEDERAL DEPOSIT INSURANCE CORPORATION, Cross-Plaintiff, Appellee, v. SHEARSON-AMERICAN EXPRESS, INC., ET AL., Cross-Defendants. __________ PRUDENTIAL BACHE SECURITIES, INC., Intervenor, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Skinner,* Senior District Judge. _____________________ ____________________ Manuel Fernandez-Bared and Ramon Coto-Ojeda with whom Nestor M. ______________________ ________________ __________ Mendez-Gomez and McConnell Valdes Kelley Sifre Griggs & Ruiz-Suria ____________ ____________________________________________________ wereon brief forintervenor, appellant PrudentialBache Securities, Inc. ____________________ *Of the District of Massachusetts, sitting by designation. Plinio Perez Marrero for intervenor, appellant Banco Cooperativo ____________________ De Puerto Rico. Enrique Peral with whom Munoz Boneta Gonzalez Arbona Benitez & _____________ _________________________________________ Peral, Ann S. Duross, General Counsel, Colleen B. Bombardier, Senior _____ _____________ _____________________ Counsel, Jaclyn C. Taner, Counsel, and Richard Schwartz were on brief _______________ ________________ for cross-plaintiff, appellee. ____________________ June 24, 1993 ____________________ CAMPBELL, Senior Circuit Judge. In these appeals, ____________________ two creditors challenge appellee's rights to the assets of the mastermind of a multimillion dollar fraud, each creditor claiming that it has a superior claim to the money. Miguel Serrano Arreche ("Serrano"), a former Puerto Rico stockbroker, was indicted and convicted in 1985 of wire fraud, mail fraud, and other violations of federal criminal statutes. Serrano's misdeeds have been extensively chronicled elsewhere. See, e.g., United States v. Serrano, ___ ____ ______________ _______ 870 F.2d 1, 3-5 (1st Cir. 1989).1 The primary victim of Serrano's fraud was Home Federal Savings and Loan Association ("Home Federal"), a Puerto Rico bank which collapsed partly from losses caused by Serrano. United States v. Serrano, 870 _____________ _______ F.2d at 4. The Federal Savings and Loan Insurance Corporation ("FSLIC") took control in 1985 and, thereafter, the appellee Federal Deposit Insurance Corporation ("FDIC") became Home Federal's successor in interest pursuant to the Financial Institutions Recovery, Reform, and Enforcement Act of 1989. See 12 U.S.C. 1821a et seq. ___ _______ ____________________ 1. See also United States v. Tormos-Vega, 959 F.2d 1103 (1st ________ _____________ ___________ Cir.), cert. denied, 113 S. Ct. 191 (1992); FDIC v. CNA _____________ ____ ___ Casualty of Puerto Rico, 786 F. Supp. 1082 (D.P.R. 1991); ________________________ United States v. Serrano, 680 F. Supp. 58 (D.P.R. 1988), _____________ _______ modified, 870 F.2d 1 (1st Cir. 1989); FSLIC v. Shearson- ________ _____ _________ American Express, Inc., 658 F. Supp. 1331 (D.P.R. 1987); _______________________ United States v. Tormos-Vega, 656 F. Supp. 1525 (D.P.R. ______________ ___________ 1987), aff'd, United States v. Boscio, 843 F.2d 1384 (1st _____ ______________ ______ Cir.), cert. denied, 488 U.S. 848 (1988); United States v. _____________ ______________ Serrano, 637 F. Supp. 12 (D.P.R. 1985); United States v. _______ ______________ Serrano, 622 F. Supp. 517 (D.P.R. 1985). _______ -3- The present action was brought in 1984 in the United States District Court for the District of Puerto Rico by the Municipality of Ponce, against defendants that included Home Federal, Serrano, Shearson Lehman Brothers, Inc., and Shearson Lehman Brothers, Inc. (Puerto Rico) (collectively "Shearson"). Home Federal filed cross-claims against Serrano, Shearson, and others. Both the Municipality of Ponce and Shearson settled and left the case. On October 16, 1989, the district court entered a default judgment for the FDIC (now representing Home Federal) on its cross-claims against Serrano, finding Serrano liable to the FDIC for $44,265,241. Thereafter, on May 17, 1990, the FDIC secured from the district court an order attaching Serrano's assets to enforce the foregoing judgment. This appeal stems from efforts by two other creditors, appellants Prudential-Bache Securities, Inc. ("Prudential") and Banco Cooperativo ("Banco"), to intervene in the same district court action after certain of Serrano's assets were transferred to the district court pursuant to the FDIC's attachment. Prudential and Banco asked the district court to withdraw its order authorizing disbursement of Serrano's funds to the FDIC, and are appealing from its refusal to do so. To understand the present dispute, it is necessary to realize that in September 1987, Serrano had petitioned for -4- bankruptcy in the United States Bankruptcy Court for the District of Puerto Rico, triggering the automatic stay of 11 U.S.C. 362. The FSLIC sought and received partial relief from the stay on January 13, 1989, permitting the instant action to continue in the district court until entry of judgment. Serrano's only significant assets were 32,400 shares of Bayam n Federal Savings Bank stock, which at one time had been held in a trading account at Prudential.2 By order of the bankruptcy court, the stock was sold for approximately $700,000 in April 1989 and the proceeds were deposited with the bankruptcy court as property of the estate. On November 17, 1988, Prudential filed its own claim in the bankruptcy proceeding. On October 16, 1989, as we have said, the district court entered a judgment for the FDIC in its cross-claims against Serrano. On May 16, 1990, the bankruptcy court issued an order dismissing Serrano's bankruptcy case, but expressly retaining jurisdiction to decide how to dispose of all funds held for Serrano. The bankruptcy court gave all creditors, which included Prudential, eleven days to express their positions as to the disposal of these funds, indicating that unless otherwise ordered, they would be returned to Serrano. See 11 U.S.C. 349(b)(3). That same day, after entry of the ___ ____________________ 2. Earlier in 1987 Prudential had delivered the stock to the United States District Court pursuant to a court order in United States v. Serrano, Crim. No. 84-381(JP). _____________ _______ -5- bankruptcy petition dismissal, the FDIC moved in the district court for a writ of attachment and execution, to be served upon the bankruptcy court and any custodian of Serrano's funds in that court, attaching Serrano's funds after payment of administrative expenses and directing their transfer to the district court for application to the FDIC's judgment. The district court allowed the motion on May 17, 1990, ordering the bankruptcy court within twenty days to deliver to the district court clerk the remaining funds belonging to Serrano subsequent to the payment of the administrative expenses, and directing that Serrano refrain from collecting the funds. A copy of this attachment was shown to Prudential's counsel on May 18, 1990, at a meeting of creditors called by Prudential at its offices to discuss disposition of the bankruptcy funds. Prudential made no effort in the bankruptcy court to challenge the validity of the attachment nor to argue that its own claim should be paid from the bankruptcy funds in preference to the FDIC's claim. On June 27, 1990, the bankruptcy court issued its order disposing of all the assets in Serrano's case. The bankruptcy court clerk, after paying various fees, expenses and a child support claim, was directed by the bankruptcy court to deliver the remainder to the district court clerk in compliance with the attachment, said funds to remain subject to any liens as per the bankruptcy court's previous order of -6- sale of the stock. Pursuant to this order, the bankruptcy clerk paid over more than $560,000 to the clerk of the district court. On August 10, 1990, the district court ordered the funds disbursed to the FDIC. Five days after the district court had entered its disbursement order, Prudential made its first appearance in this action. On August 15, 1990, Prudential moved the district court to allow it to intervene in the instant action and stay the scheduled disbursement to the FDIC, alleging that it had a lien on the attached funds that had priority over the FDIC's attachment. See Fed. R. Civ. P. 24.3 The ___ ____________________ 3. Federal Rule of Civil Procedure 24 provides, in relevant part: (a) Intervention of Right. Upon timely _______________________ application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. (b) Permissive Intervention. Upon timely ________________________ application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. -7- district court stayed the disbursement pending ruling on Prudential's motion to intervene. On August 20, 1990, Banco Cooperativo, which also had never before been a party to this action, moved to intervene, asserting that it had a priority claim to the attached funds.4 On March 11, 1992, the district court, after considering the parties' motions and exhibits submitted in support of their claims (and without specifically indicating whether it was ruling on the motions to intervene or on the merits), denied Prudential's and Banco's claims and lifted the stay of the disbursement of the funds to the FDIC. Prudential and Banco appealed separately from the district court'sfinalorder. Weconsolidatedtheirappeals,and nowaffirm.5 ____________________ 4. Appellee FDIC does not contest the existence of the appellants' purported claims against Serrano. Banco Cooperativo claims that it sued Prudential in a Puerto Rico court in 1984, seeking damages for embezzlement by Serrano during his tenure, in 1980, as an officer of Prudential's Institutional Department. In 1985, Prudential filed a third- party complaint against Serrano in that case, asking that Serrano be held liable for the amount of any judgment which may be entered against Prudential in the action brought by Banco Cooperativo. Banco claims that it eventually received a judgment against Serrano in the amount of $295,000 plus interest. _______ (Banco does not explain how it obtained a judgment against Serrano when it had sought damages only from Prudential.) At the time Prudential filed its motion to intervene, its claim against Serrano was still contingent, as final judgment had not yet been rendered in its third-party action. 5. The district court had jurisdiction over this action pursuant to 28 U.S.C. 1331, because the original plaintiff, Municipality of Ponce, brought federal claims against the defendants. This court has jurisdiction over the appeals -8- I. I. No. 92-1652 - Prudential No. 92-1652 - Prudential ________________________ Appellant Prudential raises three issues on appeal. The first, discussed in Section A below, concerns the validity of the FDIC's attachment, an issue implicitly decided by the bankruptcy court's order to release Serrano's funds in compliance with the attachment. We hold, infra, _____ that res judicata bars Prudential from raising the issue ___ ________ anew. The other two issues raised by Prudential, discussed in Sections B and C below, concern the priority of its alleged lien relative to the FDIC's attachment. The questions of priority among liens on Serrano's property and of the validity of Prudential's lien unlike the validity of the FDIC's attachment formed no part of the bankruptcy court's decision and so are not barred from being raised now. The bankruptcy court, when it ordered the funds to be turned over in compliance with the FDIC's attachment, made clear that "said funds remain subject to any liens as per our order of sale." The bankruptcy court's order of sale, dated April 27, 1989, approved the liquidation of the stock shares "provided the proceeds from the surrender of the shares are to be deposited with the Clerk of the United States Bankruptcy Court for the District of Puerto Rico, in an ____________________ pursuant to 28 U.S.C. 1291. -9- interest bearing account with liens, if any, attaching to __________________________________ said proceeds . . . ." (emphasis added). The court dismissed _____________ the bankruptcy petition before ever adjudging the validity of Prudential's alleged secured claim on the proceeds and without deciding whether the FDIC's attachment took priority over other liens on the proceeds. Res judicata, therefore, ___ ________ does not bar Prudential from now raising those questions, and we address them on their merits. A. Validity of FDIC's Attachment A. Validity of FDIC's Attachment _____________________________ Prudential's first argument is that the district court should have declared the FDIC's attachment null and void because it was obtained in violation of the automatic stay allegedly still in effect in Serrano's bankruptcy case. See 11 U.S.C. 362. It is Prudential's theory that Fed. R. ___ Civ. P. 62(a), applying by force of Bankruptcy Rules 7062 and 9014, extended the automatic stay of 11 U.S.C. 362 for ten days after the bankruptcy court had dismissed Serrano's bankruptcy petition. This argument has met with little success in other cases involving similar circumstances. See ___ In re de Jesus Daez, 721 F.2d 848, 851-52 (1st Cir. 1983); In ___________________ __ re Weston, 101 B.R. 202, 203-06 (Bankr. E.D. Cal. 1989), __________ aff'd, 967 F.2d 596 (9th Cir. 1992), cert. denied, 113 S. Ct. _____ ____________ 973 (1993). Prudential's standing to challenge an alleged violation of the automatic stay is also problematic. See In ___ __ re Pecan Groves of Arizona, 951 F.2d 242, 245 (9th Cir. 1991) __________________________ -10- ("Language from many cases indicates that, if the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay."). We do not pass on these issues, however, as we are satisfied, infra, that Prudential _____ is barred by res judicata from raising the automatic stay as ___ ________ a bar.6 We add that it would be difficult to pass on the merits of the automatic stay issue from the record now before us, which does not include a full report of the bankruptcy proceedings and, in particular, omits much information relevant to the stay and to orders issued lifting the stay in respect to the district court proceeding in question. This court recently explained: The doctrine of res judicata bars all ___ ________ parties and their privies from relitigating issues which were raised or could have been raised in a previous _________________________ action, once a court has entered a final judgment on the merits in the previous action. United States v. Alky _______________ ____ Enterprises, Inc., 969 F.2d 1309, 1314 __________________ (1st Cir. 1992). The essential elements of res judicata, or claim preclusion, are ___ ________ (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both the earlier and later suits. Kale ____ ____________________ 6. Although the district court did not rely upon the grounds of res judicata, and the parties ignored this theory on ___ ________ appeal, we may do so as we need not limit ourselves to the exact grounds for decision utilized below. Watterson v. _________ Page, 987 F.2d 1, 7 n.3 (1st Cir. 1993); Aunyx Corp v. Canon ____ __________ _____ U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992), cert. denied, _____________ ____________ 113 S. Ct. 1416 (1993). -11- v. Combined Insurance Co. of America, 924 _________________________________ F.2d 1161, 1165 (1st Cir.), cert. denied, ____________ ___ U.S. ___, 112 S. Ct. 69, 116 L. Ed. 2d 44 (1991). Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. ____________ ___________________ 1992), cert. denied, 113 S. Ct. 1416 (1993) (emphasis in _____________ original). "The normal rules of res judicata and collateral ___ ________ estoppel apply to the decisions of the bankruptcy courts." Katchen v. Landy, 382 U.S. 323, 334 (1966); Chicot County _______ _____ _____________ Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 375-78 _______________ _________________ (1940); Turshen v. Chapman, 823 F.2d 836, 839 (4th Cir. _______ _______ 1987); see generally 1B James Wm. Moore et al., Moore's ___ _________ ______ _______ Federal Practice 0.419[3] (2d ed. 1993). Orders, judgments ________________ and decrees of the bankruptcy court from which an appeal is not timely taken are final, 1 Collier on Bankruptcy _______________________ 3.03[4], at 3-179 (Lawrence P. King ed., 15th ed. 1993), even if erroneous. Union Joint Stock Land Bank v. Byerly, 310 ____________________________ ______ U.S. 1, 7-8 (1940); Van Huffel v. Harkelrode, 284 U.S. 225, __________ __________ 227 (1931). While actions taken in violation of the automatic stay are often characterized as void and without effect, orders of the bankruptcy court modifying the stay or finding no violation, even if erroneous, are entitled to respect and are not subject to collateral attack. See Union ___ _____ Joint Stock Land Bank, 310 U.S. at 7-8 ("The District Court _____________________ did not lose jurisdiction by erroneously construing or applying provisions of the statute under which it administered the bankrupt estate. Its order was voidable, -12- but not void, and was not to be disregarded or attacked collaterally . . . ."); 1B Moore's Federal Practice __________________________ 4.19[3-.2], at 635. All the elements of res judicata are met here. ___ ________ First, by its final order on June 27, 1990, transferring Serrano's funds in compliance with the attachment, the bankruptcy court rendered a final judgment that the attachment was valid. After dismissing Serrano's bankruptcy case, the bankruptcy court had retained jurisdiction to determine whether to return the debtor's funds to him or to another, and gave all the creditors, of whom Prudential was one, eleven days to "express their positions as to the disposal of these funds." Prudential's counsel appeared at the hearing in the bankruptcy court directly before issuance of the order dismissing the bankruptcy case, at which time the court indicated that that order was contemplated and said that it intended to grant the creditors ten or eleven days to "let me know what I should do with these funds." In fact, on May 17, 1990, Prudential's counsel invited the attorneys for other creditors, including the FDIC's counsel, to a meeting at Prudential's offices to discuss the disposition of the funds. This meeting took place on May 18, 1990, at which time the FDIC's counsel showed to Prudential a copy of the attachment order it had just obtained in the district court. Notwithstanding the foregoing, Prudential never advised the -13- bankruptcy court of its present contention that the FDIC's attachment was invalid, being in supposed violation of the automatic stay, nor did it urge the bankruptcy court to refuse to honor the attachment. Prudential's inaction is in notable contrast to that of another creditor, Shearson Lehman, which, on June 5, 1990, moved the bankruptcy court to declare the attachment null and void in violation of the automatic stay the very same contention Prudential belatedly raises now. Shearson Lehman's contention was expressly denied by the bankruptcy court on June 27, 1990, in its final order. In that same order, the bankruptcy court disposed of the balance of the funds in express compliance with the attachment, after first ordering the payment of certain fees, expenses and other items. The bankruptcy court's June 27 order constituted an appealable final judgment. In re Parque Forestal, Inc., 949 F.2d 504, 508-09 ___________________________ (1st Cir. 1991). However, Prudential took no appeal. Second, Prudential does not deny that, as one of Serrano's creditors, it was a party to the bankruptcy proceedings, nor that it was fully cognizant on May 16-18, 1990, of the bankruptcy court's dismissal of Serrano's case, of its retention of jurisdiction, and of the FDIC's attachment. Nor can Prudential deny that it knew of the bankruptcy court's invitation to all creditors to express their positions as to the future disposition of the funds. -14- Despite this, Prudential complains that since it received no formal notice from the district court of the FDIC's attachment, it was not a party to the dispute over the attachment. We cannot see, for purposes of any action Prudential might have taken in the bankruptcy court, that the absence of notice from the district court was material. Prudential was fully cognizant that the bankruptcy court intended to take action in June on the question of disposal of Serrano's assets, including the effect of the attachment. Yet Prudential took no steps to pursue the matter before the bankruptcy judge, including in particular to raise the bankruptcy-related issue of the effect of the automatic stay on the validity of the attachment. We are satisfied that Prudential was a party to the proceedings in the bankruptcy court over the ultimate disposition of Serrano's assets proceedings that ended with the bankruptcy court's recognition of the FDIC's district court attachment and its direction to turn over the assets in compliance therewith. Finally, Prudential's current challenge to the attachment based on the automatic stay implicates the very same underlying issue resolved by the bankruptcy court when it gave effect to the attachment. The bankruptcy court's final order of June 27, 1990 necessarily required it to have determined whether or not the FDIC's attachment was valid so as to be entitled to effect. The bankruptcy court clearly -15- had jurisdiction to make that determination and, in particular, had jurisdiction to adjudicate any claim of invalidity based on purported violation of the automatic stay. See 11 U.S.C. 105(a) (authorizing bankruptcy court ___ to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); 11 U.S.C. 362(d), (f) (authorizing court to grant relief from stay); 1 Collier on Bankruptcy 362.01[1], at 362-9 ______________________ ("[T]he bankruptcy court, as a court of equity exercising in __ rem jurisdiction over assets in its custody and control, can ___ protect its jurisdiction by injunction, whether or not such power is expressly set forth . . . ."); see generally In re ______________ _____ Continental Air Lines, 61 B.R. 758 (S.D. Tex. 1986) ________________________ (discussing jurisdiction of bankruptcy court over enforcement of automatic stay). As already noted, another creditor, Shearson Lehman, moved in the bankruptcy court to have the attachment declared null and void for precisely the same reasons Prudential now advances, viz., that the FDIC had allegedly ___ violated the automatic stay when it sought and received an order from the district court attaching bankruptcy assets within one day after the bankruptcy court had dismissed Serrano's petition.7 The bankruptcy court included in its ____________________ 7. The text of Prudential's current brief on this issue matches verbatim whole portions of Shearson's motion on this ________ issue before the bankruptcy court. -16- June 27, 1990 order a specific denial of Shearson Lehman's motion, indicating by that ruling its absence of doubt concerning the existence of jurisdiction to adjudicate the claimed bar of the automatic stay. Prudential never made a similar motion nor in any way challenged the attachment in the bankruptcy court, nor did it appeal from the bankruptcy court's order recognizing the FDIC's attachment. Instead, after the bankruptcy court had acted and the attachment had been fully executed, Prudential petitioned to intervene in the attaching district court for the purpose of arguing, post hoc, that the bankruptcy automatic stay had invalidated the attachment.8 By the time of its petition, a final judgment giving effect to the attachment was in effect in the bankruptcy court. As res judicata now bars a collateral attack on the bankruptcy ___ ________ court's judgment, we treat the FDIC's attachment as valid. B. Pledge Agreement B. Pledge Agreement ________________ Prudential says that, even assuming the FDIC had a valid attachment on the stock proceeds, Prudential holds a superior lien on the proceeds by virtue of a form signed by ____________________ 8. While Prudential was not formally noticed as to the attachment, it learned about it from the FDIC's counsel on May 18, 1990, and, as an additional course, could have promptly sought to intervene in the district court in hopes of quashing the attachment before it was executed in the bankruptcy court. Instead, Prudential waited for nearly three months, until well after execution of the attachment, before doing anything. -17- Serrano to open a brokerage account at Prudential (the "Customer Agreement").9 Prudential contends that the Customer Agreement operated, under Puerto Rico law, as a "pledge" of any securities held in the brokerage account. By virtue of this pledge, Prudential reasons, it acquired a lien over the Bayam n Federal stock shares and their proceeds prior to the FDIC's attachment because the stock was, up until 1987, held in Serrano's account at Prudential. The district court correctly rejected Prudential's argument. Puerto Rico law provides, "A pledge shall not be effective against a third person, when evidence of its date is not shown by authentic documents." 31 L.P.R.A. 5023. The Supreme Court of Puerto Rico has stated: "An authentic ____________________ 9. The Customer Agreement provided, in part: I [Serrano] agree, as follows, with respect to all the accounts in which I have an interest alone or with others, which I have opened or open with you [Prudential] for the purchase and sale of securities and commodities: . . . Any and all credit balances, securities, or contracts relating thereto and all other property of whatever kind belonging to me or in which I have an interest held by you or carried for my accounts shall be subject to a general lien for the discharge of my obligations to you (including unmatured and contingent obligations) however arising . . . . -18- document is a legalized document, which is publicly attested, which is legally valid by itself." Ramos Mimoso v. Tribunal ____________ ________ Superior, 93 P.R.R. 538, 540 (1966). A private agreement or ________ writing is not an authentic document; a document verified before a notary public is an authentic document. In re _____ Santos & Nieves, Inc., 814 F.2d 57, 60 (1st Cir. 1987); Ramos _____________________ _____ Mimoso, 93 P.R.R. at 541. The record here supports the ______ district court's finding that no notarized or other properly authenticated document evidenced the date of Serrano's alleged pledge of the stock shares. The only document alleging to show the date of the supposed pledge is the Customer Agreement, which is merely signed by the parties and not notarized. Prudential concedes that no notarized or otherwise "authentic" document exists to evidence the date of the pledge, but argues that it is sufficient that the purpose of _______ the authentic document requirement was fulfilled. Prudential filed a copy of the Customer Agreement in 1987 with the clerk of a court in which criminal proceedings against Serrano were being conducted, and now argues that this filing satisfies the policy behind 31 L.P.R.A. 5023. However, the authentic document rule is "a formal and absolute rule" that is strictly construed. In re Supermercados San Juan, Inc., 575 ___________________________________ F.2d 8, 12 (1st Cir. 1978); Trueba v. Zalduondo, 34 P.R.R. ______ _________ 713, 716 (1925). Neither section 5023 nor any cases -19- interpreting it support Prudential's theory that the authentic document requirement can be fulfilled simply by filing a copy of an unnotarized document in court. Prudential attempts to analogize this case to Trueba v. Zalduondo, 34 P.R.R. 713 (1925), in which the ______ _________ Supreme Court of Puerto Rico held that a transfer of corporate stocks as collateral for a loan that was recorded in the corporations' official records was valid against later-attaching third parties, even though the transfer did not comply with the authentic document rule codified in the predecessor statute to 31 L.P.R.A. 5023. However, Trueba ______ expressly held that section 13 of the Private Corporations Act, (now codified as 14 L.P.R.A. 1509), and not the predecessor to 31 L.P.R.A. 5023, governed under those circumstances. The Trueba decision "was based on the fact ______ that stock so transferred would be authenticated by the public and formal records of the corporation as a transfer of a security interest." In re Supermercados San Juan, Inc., ____________________________________ 575 F.2d at 12. The Trueba court did not create an exception ______ to section 5023 and, in fact, reiterated that the authentic document rule "is a rigid rule." Trueba, 34 P.R.R. at 716. ______ Because Prudential does not contend that the Private -20- Corporations Act, as opposed to 31 L.P.R.A. 5023, governs this case, Trueba is inapposite.10 ______ The district court correctly held that Prudential's purported pledge agreement did not comply with the authentic document requirement of 31 L.P.R.A. 5023 and thus was not valid against the FDIC as a pledge. C. Puerto Rico Agency Law C. Puerto Rico Agency Law ______________________ Prudential argues that it acted as Serrano's agent for the purchase and sale of securities and, as such, acquired a statutory lien on all securities held on behalf of Serrano, including the Bayam n Federal stock. Prudential points to a Puerto Rican statute providing that, "The agent may retain the things which are the objects of the agency in pledge until the principal pays the indemnity and reimbursement referred to in the two preceding sections [ 4462, 4463]." 31 L.P.R.A. 4464. Prudential misinterprets the statute, however. Even if Prudential were Serrano's agent, section 4464 does not give it a lien on the stock proceeds superior to the FDIC's attachment because Prudential ____________________ 10. Prudential's citation of In re Las Colinas, Inc., 294 F. _______________________ Supp. 582 (1968), vacated and remanded, 426 F.2d 1005 (1st ____________________ Cir. 1970), is similarly unhelpful. Even if parts of it remain good law, the relevant issue in that case was whether certain collateral, transferred after a pledge agreement was notarized and signed, constituted a valid pledge of that collateral. Id. at 602-03; see also Omega Int'l Corp. v. ___ ________ __________________ Interstate Steel de Puerto Rico, Inc., 590 F. Supp. 844, 850 ______________________________________ (D.P.R. 1984) (explaining In re Las Colinas). Here, _____________________ Prudential concedes that there was no notarized pledge agreement. -21- did not "retain the things," viz., the Bayam n Federal stock ___ certificates. The stock was transferred to a court in 1987 pursuant to a court order, and was subsequently liquidated. We find no authority for the proposition that section 4464 creates statutory liens on things, let alone their proceeds, which are not retained by the agent. For this reason alone, the district court's ruling that Prudential does not have a lien over the stock pursuant to Puerto Rico agency law was plainly correct.11 The district court did not err in finding that Prudential had no lien with priority over the FDIC's attachment and in dismissing Prudential's claims over the funds attached by the FDIC.12 II. II. No. 92-1652 - Banco Cooperativo No. 92-1652 - Banco Cooperativo _______________________________ Appellant Banco Cooperativo says that it obtained a judgment and award of damages against Serrano on September 15, 1987 from a Puerto Rico court in a civil action. Banco ____________________ 11. The district court also found that section 4464 was inapplicable because Serrano's alleged liability to Prudential is unrelated to the stock shares previously held in his account and because the liability was merely contingent, not due and payable. See I-II Jose Puig Brutau, ___ Fundamentos de Derecho Civil 545-46 (2d ed. 1976). ____________________________ 12. Prudential also makes various arguments based on New York law. We do not consider any of them as Prudential makes no argument on appeal that the district court erred in determining that Puerto Rico law, not New York law, governs this case. See Fed. R. App. P. 28(a)(3), (5). ___ -22- never executed the judgment, attached the funds that are the subject of this appeal, or otherwise obtained a lien on any of Serrano's property. Banco also concedes that the FDIC obtained a valid judgment against Serrano on October 16, 1989, and properly executed the judgment by attaching the funds at issue on May 17, 1990. Banco contends, nonetheless, that Puerto Rico law gives its claim on Serrano's assets priority over the FDIC's. We agree with the district court that the statute on which Banco relies, 31 L.P.R.A. 5194, does not apply here. The first provision of Title 31, Chapter 399 provides: "Credits shall be classified for their graduation and payment in the order and manner specified in this chapter." 31 L.P.R.A. 5191. 31 L.P.R.A. 5194 provides in part: With regard to all other personal and real property of the debtor, preference shall be given to: . . . (4) Indebtedness which without a special privilege appear: (a) In a public instrument. (b) In a final judgment, should they have been the object of litigation. These credits shall have preference among themselves according to the priority of dates of the instruments and of the judgments. Banco interprets section 5194(4) to mean that its claim to the funds has "preference" over the FDIC's claim because Banco obtained its judgment two years before the FDIC was awarded its judgment. Under Banco's interpretation, section -23- 5194(4) makes irrelevant the fact that the FDIC attached the property in dispute and Banco did not. The Supreme Court of Puerto Rico has consistently held otherwise, finding that 31 L.P.R.A. 5194 does not supplant the standard rule that, as between two judgment creditors without other liens, the first creditor to attach has priority. In Oronoz & Co. v. Alvarez, 23 P.R.R. 497 ____________ _______ (1916), the Court rejected the argument that a creditor always has priority if it has a judgment antedating the judgment of other creditors. Id. at 500. The Court ___ explained: We have recently decided that mere priority in judgment gives the prior creditor no lien. Auffant v. Succession _______ __________ of Manuel de J. Ramos et al., [23 P.R.R. _____________________________ 385 (1916)]. An attachment or other similar step is necessary to give the judgment a priority and as between judgment creditors the first to attach has the priority. It is a race of diligence. The priority of payments to which sections 1822 et seq. of the Civil _______ Code [31 L.P.R.A. 5191 et seq.] relate _______ has no application to attachments. Id. The Court reaffirmed the first-to-attach rule in Puerto ___ ______ Rico Bedding Mfg. Corp. v. Herger, 91 P.R.R. 503 (1964), _________________________ ______ writing that, "There is no question that among common creditors the first one who attaches has preference over the others . . . ." Id. at 507. The Court clarified that the ___ preference created by attachment "does not go beyond the right which the debtor may have over the property attached," -24- meaning that valid liens already on the property when attached cannot be defeated by an attachment. Id. In ___ Empresas Capote, Inc. v. Superior Court, 3 P.R. Sup. Ct. ______________________ _______________ Off'l Translations 1067 (1975), the Supreme Court of Puerto Rico reiterated, "It should be remembered that, grounded on the axiom prior tempore portior jure, even among common ____________________________ creditors, '. . . the first one who attaches has preferences over the others, but such preference does not go beyond the right which the debtor may have over the property attached.'" Id. at 1078-79 (quoting Puerto Rico Bedding Mfg. Corp. v. ___ ________________________________ Herger, 91 P.R.R. 503, 507 (1964)). ______ Some provisions of Chapter 399 other than 31 L.P.R.A. 5194 create statutory preferences, a concept equivalent to statutory liens, on certain types of property. These statutory preferences take priority over attachments even if the preference holder does not formally attach the property. For example, 31 L.P.R.A. 5192(1) creates, in essence, a seller's lien "for the amount of the sale of [the] personal property which may be in possession of the debtor to the extent of the value of the same." 31 L.P.R.A. 5192(1); see In re Jack's Club & Hotel, 138 F. Supp. 620, 622 (D.P.R. ___ __________________________ 1956). Thus, the credit of a manufacturer who was not paid for mattresses and bed frames it sold to a retail store had priority over the credit of another creditor who attached the items in the store. Puerto Rico Bedding Mfg. Corp., 91 _________________________________ -25- P.R.R. at 507-09. While the attachment created a preference, or lien, in favor of the attaching creditor, "such preference does not go beyond the right which the debtor may have over the property attached." Id. at 507-08. That is, 31 L.P.R.A. ___ 5192, without the need for execution or attachment, gives the seller an interest in the property sold that diminishes the debtor's interest in the property and that cannot be defeated by attaching creditors. See also Heirs of Garriga ________ _________________ v. O'Meara, 28 P.R.R. 332, 334-35 (1920) (discussing priority _______ of the statutory preferences created by 31 L.P.R.A. 5192 over attachments). In contrast, 31 L.P.R.A. 5194(4) does not create a seller's lien or any other type of statutory lien on property of the debtor. It does not refer to specific property of the debtor or specific transactions between the creditor and debtor. Compare 31 L.P.R.A. 5192(3) (creating _______ lien for the costs of transportation on goods transported by creditor) and 31 L.P.R.A. 5192(6) (creating lien on fruit ___ crops in favor of creditor who provided seeds) with 31 ____ L.P.R.A. 5194(4) (referring to no specific property). The silence of 5194(4) implies that a general judgment creditor must execute its judgment by attaching property, such as the debtor's cash or stock certificates, before it can claim any sort of "lien" on that property. -26- Here, the FDIC and Banco were both judgment creditors, but the FDIC, by attaching the stock proceeds, obtained a lien on those proceeds which has priority over Banco's unexecuted judgment against the debtor. Banco had no lien or other legally-recognized property interest in Serrano's assets at the time of the attachment. All it had was an unsecured credit in its favor as the result of a court judgment. Thus, the FDIC's attachment reached all of the ___ funds released by the bankruptcy court and is not subject to a claim by Banco. For these reasons, the district court did not err in determining that 31 L.P.R.A. 5194(4) does not give Banco, which did not execute its judgment, priority over the FDIC, which obtained a valid attachment of the funds.13 ____________________ 13. We have considered and found no merit in Banco's myriad other arguments. For example, we do not have the authority to declare Oronoz & Co. to be wrongly decided by the Puerto ____________ Rico Supreme Court or mistranslated by the official court translator, as Banco urges us to do. The case of Rodr guez _________ v. Solivellas & Co., 49 P.R.R. 618 (1936), which discussed 31 ________________ L.P.R.A. 5194, held that a prior mortgage on certain property had priority over a cautionary notice of attachment on the property. It did not hold, as appellant maintains, that attachments have no effect on the rights of judgment creditors with prior claims, but relied instead upon the same principle discussed above, that "[an] attachment is valid only as regards any balance left after cancelling the former security." Id. at 623. ___ -27- Therefore, the district court properly dismissed Banco Cooperativo's claim.14 III. III. In conclusion, we find no error and so affirm the district court's order in Appeal No. 92-1652, dismissing the _______ claims of Prudential, and in Appeal No. 92-1651, dismissing _______ the claim of Banco Cooperativo to the funds held by the court. Affirmed. Costs to appellee. ________ _________________ ____________________ 14. Banco complains that the district court should have "reprobated" or sanctioned the FDIC for acting in bad faith when it obtained its attachment. Banco did not raise this issue in a timely fashion, waiting until it moved for reconsideration of the district court's Opinion and Order to bring the issue to the court's attention. Consequently, we will not consider it on appeal. See Brown v. Trustees of ___ _____ ___________ Boston Univ., 891 F.2d 337, 352 (1st Cir. 1989), cert. _____________ _____ denied, 496 U.S. 937 (1990). Moreover, we find no evidence ______ in the record to support Banco's allegations of bad faith on the FDIC's part. -28-